Argued 18 March, 1898; decided 13 February; rehearing denied 13 March, 1899.

## THOMAS *v.* BARNES.

[56 Pac. 73.]

1. JOINT AND SEVERAL JUDGMENT—JOINT BOND.—In an action on a bond of indemnity given by several parties, a recovery must be had against all or none, unless one or more has set up and maintained a defense personal to himself.

2. INDEMNITY TO OFFICER—DEFENSE.—Where several attaching creditors give a bond to the sheriff conditioned that, if he will hold certain attached property against all claimants, defendants will indemnify him against any loss or damages by reason thereof, a direction to release one or more attachments would constitute no defense, the liability not being severable.

From Multnomah: E. D. SHATTUCK, Judge.

Action by Al Thomas against F. C. Barnes, the Oregon Ice Company, and H. F. Gullixson, to recover damages for the breach of a bond. Plaintiff appealed from a judgment against him.

REVERSED.

For appellant there was a brief over the names of *Hume & Hall* and *Glen O. Holman*.

For respondent there was a brief over the names of *Frank V. Drake* and *Fred. R. Strong*.

MR. JUSTICE BEAN delivered the opinion.

This is an action upon an indemnifying bond, given by the defendants to the plaintiff, as Constable of South Portland District in Multnomah County. The complaint, after alleging the commencement by the several defendants of separate actions in said justice's court against one Sengfelder, and the seizure by the plaintiff, as such constable, of certain property belonging to Sengfelder under writs of attachment issued in such actions, further avers that one William Thompson demanded possession of such property, and threatened to bring an action against the plaintiff to recover the same; that, in order to indemnify plaintiff against such threatened action, the three defendants, F. C. Barnes, H. F. Gullixson & Co., and the Oregon Ice Co., jointly executed and delivered to him a bond conditioned that, if he would retain possession of such property, and refuse to deliver it to Thompson, they would save him harmless from all damages, costs, and expense by reason thereof. The complaint then alleges that thereafter Thompson began an action against the plaintiff to recover possession of such property, which resulted, after a trial on the merits, in a judgment in his favor for the recovery thereof, or, if a delivery could not be had, then for the sum of $1,910.40, the value thereof, and the further sum of $260.56 damages for its detention, and for the sum of $89.35 costs and disbursements; that, before the commencement of this action, the plaintiff was compelled to

and did pay such judgment, and that he has demanded of the defendants that they reimburse and save him harmless, but they have refused to do so.

The defendant Barnes answered separately, denying all the material allegations of the complaint, and for a further and separate defense alleged that, while it may be true that Thompson obtained judgment against the plaintiff for the recovery of the possession of the property seized under his writ of attachment against the property of Sengfelder, he was not notified of the commencement or pendency of the action therefor, and was not given an opportunity to make any defense thereto, and did not know of Thompson's judgment until after it had been entered; that he has been informed, and believes and charges the fact to be, that none of the defendants herein were notified of the pendency of such action prior to the entry of judgment therein, and that there were good and substantial defenses thereto on the merits which the plaintiff willfully and negligently omitted to interpose; and further alleged that he received no consideration for the execution of the pretended writing or instrument set forth in the plaintiff's complaint, and in this behalf avers that on or about the seventeenth of February, 1892, he commenced an action in the Justice's Court for South Portland Precinct against Sengfelder, and procured a writ of attachment to be issued, and placed in the hands of a deputy sheriff for service; that he had no knowledge of the facts attending the service of the writ, and that some days subsequent thereto the plaintiff came to him with a writing, which he requested him to sign, with other persons, accompanying his request with the declaration that he had attached the property of Sengfelder under several writs of attachment, including that of defendant, and was holding possession thereof under said writs, and de-

sired to be indemnified ; that several persons, including H. F. Gullixson, Portland Ice Company, Muirhead & Murhard, W. H. Butterfield, and M. A. Gunst, had severally commenced actions against Sengfelder, and caused writs of attachment to be issued, which he held, and that they were all to unite in the execution of the bond in question ; that he believed such representations of the plaintiff to be true, and relied thereon, and with the express understanding that all of said persons should sign the bond or writing, and that it should become effectual only on condition of their so doing, he signed the same, and therefore that such pretended writing is not his bond. As a bar to this action he sets up the proceedings and decree in a suit brought by one P. A. Marquam in the Circuit Court for Multnomah County against Sengfelder and others, including the parties hereto.[*]

The Oregon Ice Company and Gullixson & Co. each filed a separate answer, which, in addition to the denials and averments as in the answer of Barnes, alleges that, having been informed and notified by the plaintiff that Thompson was about to commence legal proceedings to obtain possession of the goods and merchandise seized by the plaintiff under the writs of attachment issued in the several actions brought by them against Sengfelder, they each notified and informed him that they would release and relinquish any and all claims or right in and to said goods, wares, and merchandise by reason of such attachments, and then and there directed the plaintiff to release the same ; that they made no claim to the goods, or any part thereof, and that the plaintiff incurred no expense or costs, nor was he in any way damaged or injured, by reason of any claim or demand made by either of these defendants to such goods, wares, and merchandise.    The reply put in issue the allegations of the sev-

---

[*]NOTE.—The case here referred to is *Marquam* v. *Sengfelder,*—Or.—REPORTER.

eral answers, and upon the trial the jury returned a verdict in favor of the defendants, the Oregon Ice Company and H. F. Gullixson & Co., and against the defendant, Barnes, for the sum of $2,681.93.    Upon this verdict the court rendered judgment in favor of the ice company, and against Gullixson & Co. for their costs and disbursements, and subsequently, on motion of Barnes, set aside the verdict and dismissed the action as to him, on the theory that the judgment in favor of Gullixson & Co. and the ice company operated as a release of him.

1.    It will be observed from the statement of the issues. that this is an action upon a joint undertaking executed by the three defendants, and, therefore, that a recovery must be had against all or none, unless one or more of them has set up and maintained a defense personal to himself ; and such does not seem to have been the case in this instance.    Each of the defendants admits in his answer that he signed the instrument upon which this action is based, but all claim that it was signed under misrepresentations and misstatements, and all plead other matters which they claim go in bar of the action. These defenses are common to all of the defendants, and, if successfully maintained by either, ought to have resulted in a verdict in favor of all.

2.    The additional separate defense attempted to be set up by the Oregon Ice Company and Gullixson & Co., to the effect that, when they were informed that Thompson had asserted and was about to enforce his claim to the attached property, they directed the plaintiff to release and relinquish it so far as their writs were concerned, would constitute no defense to an action upon the bond or undertaking, because their liabilities were not severable, and did not depend upon the separate attachments.    The bond is conditioned that, if the plaintiff will retain possession, and proceed to a sale of the prop-

erty under any of the attachments referred to therein, the defendants will indemnify him against any loss or damage by reason thereof, and therefore a mere direction to release one or more of the attachments would constitute no defense to this action.

It is claimed by the plaintiff that, in addition to the defenses pleaded in the several answers which are common to all, the defendants the Oregon Ice Company and Gullixson & Co. each pleaded a defense going to the merits of the whole case as to them, and this is sought to be maintained on the theory that the answers deny that such defendants signed or executed the bond in suit. But the denials of the answer must be construed in connection with the affirmative and separate defenses, and, as so construed, it amounts to a denial that they executed the bond in question because they signed it relying upon the representations of the plaintiff that other parties were to join in the execution thereof, and for this reason it never became their bond or obligation. Upon what theory the jury proceeded in arriving at their verdict, or what the views of the trial court were upon the law of the case, is not disclosed by this record. We have nothing before us but the pleadings, verdict of the jury, and the judgment rendered thereon, and the statement in the bill of exceptions that upon the trial the respective parties introduced evidence tending to prove all the issues made in the pleadings, and also tending to show that after the execution of the instrument mentioned in the complaint, the defendants the Oregon Ice Company and Gullixson & Co. directed the plaintiff to release and no longer hold for them the property claimed by Thompson. Under this record the verdict as returned was unauthorized by the pleadings, and the court erred in rendering any judgment thereon. Reversed, and remanded for a new trial.                                    REVERSED.