812 F.2d 1116
 55 USLW 2525
 In re Proceedings By MERRILL LYNCH RELOCATION MANAGEMENT, INC.
Jack CLOPPER, Plaintiff-Appellant,
v.
MERRILL LYNCH RELOCATION MANAGEMENT, INC., Defendant-Appellee,
v.
John M. BERMAN, individually, Appellant.
 No. 85-4255.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted November 6, 1986.
Decided March 12, 1987.
 
 John M. Berman, Beaverton, Or., for plaintiff-appellant.
 Norman J. Wiener, Thomas C. Sand, and Gregory A. Chaimov, Portland, Or., for defendant-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before ANDERSON, HUG and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 INTRODUCTION
 
 1
 This is a case of first impression. The district court adjudged attorney John Berman in contempt for failing to pay costs taxed against his client, a nonresident plaintiff, pursuant to an Oregon statute. Berman and his client, Jack Clopper, appeal, challenging the contempt order and the underlying order holding Berman liable for costs. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 FACTS
 
 2
 Clopper filed suit in state court for breach of contract and violation of the Oregon Unlawful Trade Practices Act against defendant-appellee Merrill Lynch Relocation Management, Inc. ("Merrill Lynch"). Neither party was an Oregon resident. Merrill Lynch removed to the federal court for the District of Oregon, where the plaintiff won a jury verdict of $264,207.44. The district court entered a judgment n.o.v., which we affirmed in an unpublished disposition. Clopper v. Merrill Lynch Relocation Mgmt., Inc., 749 F.2d 36 (9th Cir.1984), cert. denied, --- U.S. ----, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985). Merrill Lynch filed a cost bill and the district court clerk awarded costs of $2,498.52 to defendant.
 
 
 3
 Berman represented Clopper throughout the proceedings. Until the underlying judgment was entered and the cost bill filed, Berman prosecuted Clopper's claim as a member of the law firm of Spears, Lubersky, Campbell, Bledsoe, Anderson and Young. After the Clerk's cost award, Berman assumed representation of Clopper individually in place of the Spears, Lubersky firm. Berman filed his Notice of Substitution on June 7, 1985, to be effective June 13, 1985.
 
 
 4
 On June 7, 1985, Merrill Lynch wrote a letter demanding that Spears, Lubersky pay the cost award. In two later letters, on June 19 and August 1, Merrill Lynch demanded that Berman pay the sum. Merrill Lynch then filed a motion pursuant to Sec. 20.160 of the Oregon Revised Statutes, to enforce payment by Berman as Clopper's attorney or hold him in contempt. After argument, the district court entered an order declaring that Berman was obligated to pay the bill, had refused to pay, and thus, was in contempt. The contempt order was to take effect approximately thirty days after the ruling.
 
 
 5
 Appellant contends that the district court erred by applying Or.Rev.Stat. Sec. 20.160 to this federal diversity action. Berman also contends that the statute violates his and Clopper's rights under the equal protection clause, interstate privileges and immunities clause, commerce clause, and due process clause (right to travel) of the United States Constitution. Finally, appellant argues that even if the statute constitutionally applies to a federal court case, he improperly was held liable for plaintiff's costs because he was substituted as counsel of record after the judgment taxing costs for defendant was entered.
 
 STANDARD OF REVIEW
 
 6
 We review de novo the district court's legal conclusions, including its interpretation of state law. Triangle Mining Co. v. Stauffer Chem. Co., 753 F.2d 734, 738 (9th Cir.1985); Matter of McLinn, 739 F.2d 1395, 1398 (9th Cir.1984) (en banc).
 
 DISCUSSION
 
 7
 I. Application of Or.Rev.Stat. Sec. 20.160 by the District Court
 
 
 8
 If the underlying order holding Berman liable for plaintiff's costs is in error, the contempt order must fall. Cf. Scott & Fetzer Co. v. Dile, 643 F.2d 670 (9th Cir.1981) (considering civil contempt order for violation of remedial injunction).
 
 A. Federal Rule of Civil Procedure 69(a)
 
 9
 Merrill Lynch contends that the district court was bound by Fed.R.Civ.P.Rule 69(a) to apply the Oregon statute. Rule 69(a) requires district courts to follow state procedures in collecting a judgment:
 
 
 10
 Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held ... except that any statute of the United States governs to the extent that it is applicable.
 
 
 11
 Thus, if the practice outlined in Or.Rev.Stat. Sec. 20.160 is "supplementary to and in aid of judgment," or "in aid of execution," the district court was bound by Rule 69(a) to apply it.
 
 Or.Rev.Stat. Sec. 20.160 provides:
 
 12
 Liability of attorney of nonresident or foreign corporation plaintiff; security for costs. The attorney of a plaintiff who resides out of the state or is a foreign corporation, against whom costs are adjudged in favor of a defendant, is liable to the defendant therefor; and if the attorney neglects to pay the same, upon the information of the defendant shall be punished as for a contempt. The attorney may relieve or discharge the attorney from such liability by filing an undertaking at the commencement of the action or suit, or at any time thereafter before judgment or decree, for the payment to the defendant of the costs and disbursements that may be adjudged to the attorney, executed by one or more sufficient sureties.[1]
 
 
 13
 We have been unable to find any reported decisions interpreting the scope of Or.Rev.Stat. Sec. 20.160.
 
 
 14
 State law has been applied under Rule 69(a) to garnishment, mandamus, arrest, contempt of a party, and appointment of receivers. 12 Wright & Miller, Federal Practice and Procedure: Civil Sec. 3012 at 66-68 (1973 & Supp. 1986). It has also been applied to determine liability of a successor corporation. Id. at 68. We conclude that the cost provisions of Or.Rev.Stat. Sec. 20.160 are sufficiently similar to these categories to be applicable under Rule 69(a). The statute also falls within the plain words of Rule 69, for it clearly is in "aid of execution" of judgments awarding costs to defendants.
 
 
 15
 Berman resists this conclusion because the Oregon statute does not stop at supplementing or aiding judgment. It alters the court's judgment by rendering the attorney personally liable for costs taxed against a nonresident plaintiff,[2] on pain of contempt. Even if this fact were to take the statute out of Rule 69(a), however, it would not aid Berman. The creation of primary liability in the attorney favors the conclusion that Or.Rev.Stat. Sec. 20.160 is a substantive provision of state law, applicable in this diversity action by reason of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 16
 B. Or.Rev.Stat. Sec. 20.160 As a Substantive Law Provision
 
 
 17
 Appellee notes that Sec. 20.160 resembles the statute considered by the Supreme Court in Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Cohen statute required small stockholders in derivative suits to post security for expenses upon request by the defendant corporation. Although procedural in some respects, the statute was determined to be an integral part of state policy. See id. at 555-56, 69 S.Ct. at 1229-30. Under the Erie-doctrine case of Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Court affirmed the district court's use of the New Jersey statute:
 
 
 18
 Even if we were to agree that the New Jersey statute is procedural, it would not determine that it is not applicable. Rules which lawyers call procedural do not always exhaust their effect by regulating procedure. But this statute is not merely a regulation of procedure. With it or without it the main action takes the same course. However, it creates a new liability where none existed before.... Such liability is not usual and it goes beyond payment of what we know as "costs."
 
 
 19
 Cohen, 337 U.S. at 555, 69 S.Ct. at 1230. The creation of this new liability was clearly substantive. The Court continued, however, noting that the new liability would be meaningless
 
 
 20
 if it resulted in nothing but a judgment for expenses at or after the end of the case. Therefore, a procedure is prescribed by which the liability is insured.... We do not think a statute which so conditions the stockholder's action [on posting security] can be disregarded by the federal court as a mere procedural device.
 
 
 21
 Id. at 556, 69 S.Ct. at 1230.
 
 
 22
 We find this language in Cohen applicable here. Although Or.Rev.Stat. Sec. 20.160 does not condition a plaintiff's action on posting security, we think it clearly is not procedural; instead it is an integral part of state policy. Consequently, under the Erie doctrine the district court was bound to apply Or.Rev.Stat. Sec. 20.160 so long as it did not conflict with federal rules, statutes, or policies. Walker v. Armco Steel Corp., 446 U.S. 740, 749-52, 100 S.Ct. 1978, 1984-86, 64 L.Ed.2d 659 (1980); Hanna v. Plumer, 380 U.S. 460, 469-71, 85 S.Ct. 1136, 1142-44, 14 L.Ed.2d 8 (1965); Byrd v. Blue Ridge Rural Elec. Cooperative, Inc., 356 U.S. 525, 538-40, 78 S.Ct. 893, 901-02, 2 L.Ed.2d 953 (1958).
 
 
 23
 Federal courts have inherent authority to require plaintiffs to post security for costs. In re American President Lines, Inc., 779 F.2d 714, 716-17 (D.C.Cir.1985); Hawes v. Club Ecuestre el Comandante, 535 F.2d 140, 143 (1st Cir.1976); Soo Hardwoods, Inc. v. Universal Oil Prods. Co., 493 F.Supp. 76, 77 (D.C.Mich.1980); contra Trophy Productions, Inc. v. Sperling, 17 F.R.D. 416, 419-20 (D.C.Cal.1955) (holding that district court had no power to require plaintiff to furnish security for costs in absence of federal statute, rule, or precedent). A district court typically follows the forum state's practice, particularly when a party is a nonresident. 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2671 at 229 (1983). While Or.Rev.Stat. Sec. 20.170 allows nonresident plaintiffs' attorneys to avoid liability for costs by posting security, that aspect of the Oregon statutory scheme is not at issue. Berman did not post security.
 
 
 24
 The only federal rules or statutes that could conflict with the Oregon provisions are those designed to penalize attorneys for harassment, delay, or frivolousness (Rule 11), or for vexatious prolonging of litigation (28 U.S.C. Sec. 1927). Unless one assumes, which we do not, that the Oregon statute was designed to penalize attorneys for bringing nonmeritorious actions on behalf of nonresidents, neither Rule 11 nor Sec. 1927 can even arguably occupy the same field as the Oregon statute. The Oregon statute thus conflicts with no federal statutes, rules, or policies,[3] and is properly applicable under Erie.[4]
 
 
 25
 II. Constitutional Challenges to Or.Rev.Stat. Sec. 20.160
 
 
 26
 Appellant Clopper and his attorney challenge the use of Or.Rev.Stat. Sec. 20.160 on various constitutional grounds. As a threshold matter, it is unclear whether appellants have standing to raise their various claims.[5]
 
 A. Standing
 
 27
 Some of appellants' arguments assert that Sec. 20.160 prevents nonresidents from securing representation in Oregon. Clopper himself did not have that problem; he was represented by Berman. Litigants may assert "third party" rights in unusual cases where the third parties cannot bring claims on their own behalf. E.g., Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982); Granville House, Inc. v. Department of Health & Human Serv., 715 F.2d 1292, 1297-99 (8th Cir.1983). It is questionable whether Clopper and Berman have met all the requisites for asserting such rights, and the issue has not been briefed. Because we have no difficulty disposing of appellants' arguments on their merits, we will assume, without deciding, that Berman and his client together have standing to assert the rights of nonresident plaintiffs allegedly unable to secure services of Oregon attorneys due to Sec. 20.160.
 
 
 28
 B. Interstate Privileges and Immunities Claim
 
 
 29
 Plaintiff Jack Clopper is a Maryland citizen. He seems to suggest that the Oregon statute restricted his access to the courts, and that such access is a right "bearing upon the vitality of the Nation as a single entity," thereby meriting protection under the Privileges and Immunities Clause of Art. IV, Sec. 2. See Baldwin v. Fish & Game Commission, 436 U.S. 371, 383, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354 (1978). Clopper relies on Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). In Piper, the Court struck down a residency requirement for attorneys, concluding that the state could not meet its burden of demonstrating that the statute was substantially related to the state's lawful objectives. Id. at 284-87, 105 S.Ct. at 1278-80.
 
 
 30
 Piper is of no assistance to Clopper, however. No residency requirement keeps him or other nonresidents from court. Nor are nonresident plaintiffs per se required to post a cost bond. The statute merely requires the nonresident plaintiff's attorney to post security or pay costs on information of prevailing defendants who have been awarded costs.[6] "[T]he privileges and immunities clause is not an absolute.... it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." Toomer v. Witsell, 334 U.S. at 396, 68 S.Ct. at 1162. See also United Building & Construction Trades Council v. Mayor & Council of the City of Camden, 465 U.S. 208, 222, 104 S.Ct. 1020, 1029-30, 79 L.Ed.2d 249 (1984).
 
 
 31
 In Russell v. Cunningham, 233 F.2d 806 (9th Cir.1956), we rejected a contention that a local District Court of Guam rule that directly required nonresidents to file a cost bond was unfairly discriminatory: "The Guam rule to assure collection of costs from nonresidents who may be in the continental United States at the time of judgment is not inconsistent with the Federal Rules and seems a perfectly reasonable provision." Id. at 811 (footnote omitted). See also Brewster v. North Am. Van Lines, Inc., 461 F.2d 649, 651 (7th Cir.1972) (rejecting privileges and immunities attack on similar Northern District of Indiana local rule). The potential added difficulty of collecting costs from nonresidents justifies any disparate treatment here. See Toomer v. Witsell, 334 U.S. at 398, 68 S.Ct. at 1163 (Art. IV, Sec. 2 outlaws classifications based on non-citizenship unless "non-citizens constitute a peculiar source of the evil at which the statute is aimed.").
 
 C. Right to Travel
 
 32
 Appellant Clopper also claims that Or.Rev.Stat. Sec. 20.160 impermissibly infringes his right to interstate travel. The right to travel is a fundamental constitutional right which may not be "penalized" absent a compelling state interest. Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Clopper reasons that access to the state and federal courts in Oregon is essential to protecting his legal interests because actionable injuries may arise while he is traveling.
 
 
 33
 In Hawes, 535 F.2d at 140, the First Circuit upheld a rule requiring nondomiciliaries to post a minimum $500 bond for costs, expenses, and attorneys' fees in order to proceed with their actions. The court held that the rule did not directly or purposefully penalize the exercise of their right to travel.
 
 
 34
 As in Hawes, the Oregon statute does not "preclude a plaintiff's opportunity to bring suit through excessive bond requirements...." Id. at 145. Indeed, if Or.Rev.Stat. Sec. 20.160 affects appellant's right to travel at all, it clearly is less restrictive than the rules approved of in Hawes and Russell. The statute does not make nonresident access to the courts contingent on posting security, and the costs Berman was ordered to pay were taxable under federal law against any losing party. We find no infringement of the right to travel.
 
 D. Equal Protection
 
 35
 The restriction, if any, on access to the courts imposed by Sec. 20.160 does not impinge upon a fundamental right. See Boddie v. Connecticut, 401 U.S. 371, 382-83, 91 S.Ct. 780, 788-89, 28 L.Ed.2d 113 (1971); Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam); United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). We therefore review appellants' equal protection challenge under the rational basis standard.[7]
 
 
 36
 Section 20.160 appears to have been designed to assist in recovering costs from out-of-state plaintiffs bringing nonmeritorious claims. See Carmichael v. Pendleton, Dudley 173, 174 (Ga.Super.1832) (analogous Georgia statute). Costs were more difficult to recover from nonresidents than residents, or so the Oregon legislature may have thought. See Allied Stores v. Bowers, 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959) (classification valid if based "upon a state of facts that reasonably can be conceived to constitute a distinction, or difference in state policy"). Despite modern uniform agreements on enforcement and recognition of foreign judgments, see, e.g., Or.Rev.Stat. Secs. 24.105-24.255, and summary procedures in the federal courts, e.g., 28 U.S.C. Sec. 1963, we cannot say that all heightened difficulty in reaching a nonresident's assets has disappeared. The Oregon statute is sufficiently rational to withstand appellants' challenge.[8]
 
 E. Commerce Clause
 
 37
 Berman further contends that Or.Rev.Stat. Sec. 20.160 impermissibly burdens interstate commerce. He claims the statute impedes the ability of Oregon attorneys to do business with nonresidents and vice versa. While access to the courts of other states is a significant incident to interstate commerce, appellant presented no evidence of a substantial burden on commerce.
 
 
 38
 III. Berman's Liability as Successor to His Former Law Firm
 
 
 39
 The district court held Berman liable as attorney of record. Insofar as his liability arises from his status as a partner in his original firm, Berman contends that the contempt order was error because state law requires all members of a partnership to be before the court in order for an individual partner to be held responsible for a partnership debt. Merrill Lynch counters that Berman is liable under Or.Rev.Stat. Sec. 68.270, which provides joint liability for partnership obligations, and because former partners (such as Berman) remain liable for previously incurred partnership debts to the same extent as when they were partners. Oregon law provides the appropriate standards for partnership and successor liability. Fed.R.Civ.P.Rule 69(a); Christiansen v. Mechanical Contractors Bid Depository, 404 F.2d 324 (10th Cir.1968).
 
 
 40
 Section 68.270 has been held to create only a joint liability by a partnership. Wheatley v. Carl M. Halvorson, Inc., 213 Or. 228, 323 P.2d 49, 58 (1958) (considering money obligations under partnership contract). Oregon follows the "general rule that recovery must be had against all or none of joint obligors." Jefferson State Bank v. Welch, 70 Or.App. 635, 690 P.2d 1107, 1110 (1984), aff'd, 299 Or. 335, 702 P.2d 414 (1985). However, if members of a partnership are sued individually without timely objection to the failure to join all members, "the entire debt is merged in that judgment...." Anderson v. Stayton State Bank, 82 Or. 357, 373, 159 P. 1033, 1038-39 (1916) (citations omitted) (cited with approval in Jefferson, supra ).
 
 
 41
 When the cause of action against the partnership is merged by a judgment against fewer than all partners, the plaintiff no longer has a cause of action against remaining partners. See id. It follows that those adjudged liable must answer for the entire judgment.[9]
 
 
 42
 Under Oregon law, Berman should have objected to imposition of costs against him on the ground that he was but one former member of the Spears, Lubersky firm. He should have raised this objection when the motion under Or.Rev.Stat. Sec. 20.160 was heard.[10] Instead, in the district court Berman contended he was not the "appropriate counsel" to be held liable, arguing that Or.Rev.Stat. Sec. 20.160 was not "intended to make attorneys personally responsible for costs incurred before they became involved in the litigation." Brief in Opposition to Motion for Contempt at 6. How Mr. Berman can claim not to have been involved in the lawsuit is difficult to understand. He appears as plaintiff's attorney in docket entries from the suit's inception; he signed the initial complaint and several other early pleadings.[11]
 
 
 43
 The rule of Anderson contemplates timely objection to a suit against fewer than all partners on the ground that all should have been joined. The gist of Mr. Berman's objection to liability for costs was based instead on a misleading characterization of his earlier involvement in the case. He did not, in pleadings or argument before the district court, object to appellees' failure to join all of his former partners. Because Berman made no timely objection under Anderson and Jefferson, Oregon partnership law provides no refuge to avoid the liability that underlies the contempt order.
 
 
 44
 In closing, we add that we also have no difficulty in this case in upholding Berman's liability as substituted attorney. Berman did not step into the lawsuit as a stranger on the eve of assessment of sanctions. He represented plaintiff throughout, and was fully aware of the cost assessment when he filed his Notice of Substitution.
 
 CONCLUSION
 
 45
 Or.Rev.Stat. Sec. 20.160 properly applied to this diversity action. The district court's application of the Oregon statute was constitutional. We affirm the contempt order against attorney Berman.
 
 AFFIRMED.[12]
 
 
 [1]
 Section 20.160 is complemented by Sec. 20.170, which provides:
 Qualification of and exception to sureties; deposit in lieu of undertaking. The sureties in the undertaking described in Or.Rev.Stat. 20.160 shall possess the qualifications of sureties in an undertaking for bail on arrest, and their sufficiency may be excepted to by the defendant at any time within five days from notice of filing the same, and if so, they shall justify in an amount not less than $200, in like manner and with like effect as sureties for bail on arrest. Until the time for excepting to the sufficiency of the sureties has expired or, if excepted to, until they are found sufficient, the attorney is liable as if no undertaking had been given. A deposit of $200 or other sum which the court or judge may direct, with the clerk, may be made in lieu of such undertaking.
 
 
 [2]
 As a general proposition, the award of costs is governed by federal law under Rule 54(d). See 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2669 at 214 (1983) and cases there cited
 
 
 [3]
 Apart from constitutional concerns, appellant contends that the Oregon statute discriminates against nonresident plaintiffs, and therefore its use conflicts with the basic policies behind diversity jurisdiction. Appellant's Opening Brief at 7. This court has upheld the application of a comparable procedure. In Russell v. Cunningham, 233 F.2d 806, 811 (9th Cir.1956), we affirmed the application of a local District Court of Guam rule requiring a cost bond from a nonresident plaintiff
 
 
 [4]
 Appellant also contends that Oregon has a general policy of strict statutory construction to discourage creating unintended liabilities. Appellant's Opening Brief at 6-7. He further notes that "[t]here is no indication that the Oregon legislature intended to make Oregon attorneys liable for costs that it did not control," referring to taxable costs in federal district courts, which apparently are substantially higher than in the Oregon courts. Id. at 6. We reject these contentions. The statute expressly creates an intended liability. Moreover, application of the Erie doctrine is a question governed by federal law, which the Oregon legislature does not even purport to control
 
 
 [5]
 Because Berman was adjudged in contempt, he clearly has standing to challenge the district court ruling in the Article III sense
 
 
 [6]
 Berman also raises a privileges and immunities claim on his own behalf, and relies on Piper. Berman, however, is an Oregon resident. The Interstate Privileges and Immunities Clause was intended as a limitation on restrictions that states imposed on citizens of other states. See, e.g., Toomer v. Witsell, 334 U.S. 385, 395, 68 S.Ct. 1156, 1161-62, 92 L.Ed. 1460 (1948). Berman cannot invoke the Clause against his own state
 
 
 [7]
 Appellants make no claim of belonging to a "suspect class."
 
 
 [8]
 But cf. Coady v. Aguadilla Terminal Inc., 456 F.2d 677, 679 (1st Cir.1972) (dicta that "[t]o require all foreign plaintiffs, as such, to post substantial security as a condition to access to the courts may well be an unconstitutional denial of equal protection." (quoted in Hawes, 535 F.2d at 145) (emphasis supplied)); see also Aggarwal v. Ponce School of Medicine, 745 F.2d 723, 726-29 (1st Cir.1984) (avoiding decision on equal protection challenge to District of Puerto Rico Local Rule 5 as applied, circuit court concluded that district judge failed to use discretion and consider plaintiff's economic circumstances and nature of the litigation in setting amount of cost bond)
 
 
 [9]
 Under the Uniform Partnership Act, which Oregon has adopted, former members are also liable for debts of the partnership incurred while they were members. See Or.Rev.Stat. Sec. 68.580(1)
 
 
 [10]
 Berman first raised this issue only in his Reply Brief on appeal
 
 
 [11]
 Moreover, he submitted the notice of substitution fully aware that costs had been taxed in favor of Merrill Lynch a year earlier
 
 
 [12]
 Appellee's request for attorneys fees and double costs on appeal is denied